We have two interesting cases on our morning docket. We remind you we have also traffic rules. When the yellow light comes on the podium, you have two minutes left. When the red light comes on, we ask you to conclude your argument as quickly as possible. We also appreciate record citations when you have those because we may not have read the entire record before we hear argument. So for the first case, it's number 1620397, United States v. Kizzee. We'll hear from Ms. Jarman first. Yolanda Jarman, C.J.L. My name is Yolanda Jarman, and I'm C.J.L. appointed to represent Mr. Pereneal Kizzee. In this case, Mr. Kizzee contends that the district court abused its discretion when it denied him the right to cross-examine a witness crucial to the convictions in this case. A witness, the only witness who had knowledge of the issues central to the convictions, but instead the district court allowed a police officer to testify to what that key witness told him, which is also hearsay. Ms. Jarman, were you the trial attorney? No, Your Honor, I was not. In this case, the facts are that there was an officer, Officer Schultz, who had had Mr. Kizzee's structure, a home. It was never established whether he actually lived there or if it was just a place he frequented during the daytime. However, Officer Schultz had this location under surveillance. Mr. Carl Brown, the witness that Mr. Kizzee would have wanted to cross-examine that was crucial to the charges here, was seen by Officer Schultz leaving the location, the structure where Mr. Kizzee was also found. At that time, Officer Schultz stopped Mr. Brown in his vehicle, Carl Brown, as he left the structure. After a brief struggle with Officer Brown, crack cocaine was found in Carl Brown's hand after he struggled with Officer Schultz. Prior to stopping Mr. Brown in the car, Officer Schultz informed one officer, Wilkins, that he should conduct a traffic stop, find a reason to conduct a traffic stop on Carl Brown. Carl Brown was then taken to the police department where Officer Schultz began to question Mr. Brown. And on page 18 of my brief, this is the discussion that's central to the case. The prosecutor at trial did not produce Mr. Carl Brown, the key witness, who said that he received the crack cocaine from Mr. Kizzee and, in fact, Mr. Kizzee had been a distributor. This is Carl Brown's testimony. The prosecutor asked, did you go to the location? The officer says, yes. What did you discover when you arrived? The officer says, we found crack cocaine in his cap. And then he said, what did you do to Mr. Carl Brown afterwards? We had Wilkins transport him to the police department. Did you ask Mr. Brown if he wanted to talk to you? Yes, sir. That's the witness. And why did you decide to transport him to the police station? The officer responds, to talk to him. And then the prosecutor asks, once you're at the police department, did you sit down with Mr. Brown and ask him a series of questions? And the officer responded, yes. And then the prosecutor says, is that what led you to the search warrant for 963 Trinity Cutoff? This is the facility where a search warrant was executed on Mr. Kizzee. And this led to the charge, the charge in this case specifically, possession with intent to distribute and possessing a firearm with intent to distribute. So it was only Carl Brown in this case who was not produced at trial, who had any evidence or any testimony, personal knowledge at all. Is it correct that Mr. Brown had been subpoenaed by the government? Well, prior to trial, there was some discussion about that at the suppression hearing that Mr. Brown had told the government that he was not wanting to testify and also that he was not going to say what the government wanted to say. In essence, he was retracting his testimony. And this can be found at the record 1266, starting at page 1266 all the way through 1272. That's the discussion. So that's basically, the government knew at the suppression hearing that Mr. Brown, Carl Brown, was going to be key to its allegations. Nevertheless, when the Defense Council made its objections under hearsay and under the Confrontation Clause, the government maintains in the record, page 1268, that these questions and this response from Officer Shook, that yes, what your argument, as I understand it, is that even though Mr. Brown's full answers were not produced at trial, that the answers, it was obvious what those answers were so that it was damaging to your client. Is that right? Yes, Your Honor. That's correct. And there's a case in this name of the case, but it's G-O-C-I-C-H-I-O-C-A. It's mentioned in my brief. There's a line of cases that says there's a hearsay and a Confrontation Clause violation even when there is no verbatim account. In Brewton, United States Supreme Court's case, it also says that some evidence may be a defendant by implication. The question that was asked at trial, I believe, was did you ask Mr. Brown whether or not he obtained the narcotics that were discovered in his hat from perennial Kesey? So is that the right question that was asked at trial? Did you ask Mr. Brown if he got the drugs from the defendant? And the answer was yes. Is that right? Yes, sir. Okay, and that's one of the questions that you're concerned with, one of the answers that you're concerned with, because the police officer pretty much said that someone had told him that the defendant was distributing drugs. Yes, Your Honor. And that's at page 1271 in the record. He went on to ask, did you ask him if he obtained the narcotics that were discovered in his hat prior to being stopped? Yes. Not saying Mr. Kesey that time, but it says did you ask him whether or not he had seen any additional narcotics at 963 Trinity, this specific address. So there's no testimony in the trial that at the moment there was anyone else at the address besides Mr. Kesey and Carl Brown. So by implication, the only answer to the questions could be that Mr. Brown, that the witness was testifying as to what Mr. Brown would have testified had he been called at trial. Now, the government, when the objections to this line of the record, the defense counsel says, I object that this is a hearsay and a violation of confrontation clause. Now, how much drugs were found at the house once they ran the search warrant of Mr. Kesey's house? There were no drugs that could have been used for distribution, which is an element. That's what I'm asking, what was the amount of drugs? According to a field test, there was two tenths of a gram of drugs found in a plastic bag residue that was, according to one witness, protruding. So there was not enough to assume that there was distribution going on. The amount was very small. No, your honor. In fact, there were other materials, bowls, cups, microwave, other items tested in that house, and none came up positive for crack cocaine. So what evidence is there on the record of any distribution by Mr. Kesey? There is no evidence on the record of distribution other than what that key witness, Carl Brown, would have told this officer that this officer is alleging. So we contend, Mr. Kesey does, that this violation of the confrontation clause and this hearsay violation substantially harmed his case and his defense because there is a line of cases that says Mr. Kesey would have to show harmful error. And in those cases, the court would then weigh the evidence against Mr. Kesey with respect to this harmful testimony. However, in this case, Mr. Brown would have been the only witness that could have testified to this. So then the case says when there is only one witness and that witness's testimony is significant to achieve the conviction, then there has been substantial harm when there's a confrontation clause and a hearsay violation. What case are you talking about there? That is the Bruton case. Now, let me ask you, though, there are cases that say if Detective Schultz had talked to Brown and then Detective Schultz, you know, I interviewed him at the police station and then what did you do? I got a search warrant. Then the jury could still infer that he got the search warrant because Brown had told him that Kesey was dealing drugs, right? I mean, there are cases that say that's okay. Those cases, Your Honor, say that's okay when there is other evidence to corroborate this testimony. In this case, under the United States v. Johnson case, it specifically says the more an out-of-court statement implicates the defendant, the greater the harm. In fact, in this case, when defense counsel objected, the government had no answer as to why this line of questioning did not violate the confrontation clause. And the confrontation clause, of course, is critical to Mr. Kesey's defense. In fact, so critical, even in a plea colloquy, district judges under Rule 11 are required to admonish any defendant, even when giving a plea, that they're giving up their right to trial, a significant right being the right to cross-examine the witness. Just for my own information, I know the defendant didn't have the obligation to subpoena Mr. Brown, but couldn't the defense have called him to the stand? The defense, of course, could have called him to the stand, but the government claims that Kesey, had he called him, would have had an opportunity to cross-examine him. But in this case, the government has— Which proves that it was a confrontation issue, right? Yes, Your Honor. So the defense counsel argued that, of course, this is the government's burden. In fact, they could just stand there and do nothing and let the government put on its case, technically. So it had no obligation to pursue Mr. Brown in terms of subpoenaing him for the record. And as to the objection to the hearsay, again, there is case law that says just because the police officer or whomever does not approach the stand and give verbatim testimony as to what As a matter of fact, there's one case, I believe it's mentioned in my brief, Coy. It's a Supreme Court case, even in a sex abuse case, where there is definitely a significant interest in protecting children in those cases. Even the protection that we give to And the Supreme Court said in that case that even the defendant had the right to cross-examine the child in that case. Thank you for your time. If you have time for rebuttal, thank you. Mr. Berry? Why did the government choose to proceed in this way? I've never seen this before. May it please the Court, Your Honor? Yes, sir. Ms. German? Your Honor, well, let me answer your question directly, and then if I could, I'll backfill with some additional facts. Mr. Brown was not unavailable to answer your earlier question. We had subpoenaed Mr. Brown prior to trial. The prosecutors had interviewed Mr. Brown approximately two weeks before trial. At that point in time, Mr. Brown stated, number one, first, I do not remember where I got the drugs. Number two, I am not going to tell you where I got the drugs. And third, I did not get the drugs from perennial Kizzee. To backfill with facts, on February the 4th, when Detective Schultz and Detective Lehman were watching Mr. Kizzee's house at 963 Cut-Off Trail, they saw what they believed to be a hand-to-hand drug trafficking exchange. Mr. Brown and Mr. Kizzee exchanged two phone calls each. Almost immediately after the fourth and final call, Mr. Brown arrives at Mr. Kizzee's house. Mr. Brown is there less than two minutes, and he leaves. Detective Schultz had a patrol officer stop Mr. Brown just a few blocks away and just a few minutes after he had left Kizzee's house. There was no intervening stop by Mr. Brown. At the time Mr. Brown was stopped, someone named George sent a text to one of Kizzee's three cell phones and said they just got Carl at Snaggs, which Detective Lehman explained meant the police just arrested Carl Brown at Snaggs Record Service a few blocks away from Kizzee's house. Detective Lehman and Detective Schultz arrived as the patrol officer Wilkins was Carl Brown. A search of Carl, a consent search of Carl Brown yielded five grams of crack cocaine weighing 0.54 grams in a plastic bag inside his baseball cap. There was a brief struggle between Officer Wilkins and Mr. Brown. Mr. Brown was arrested. Detective Schultz asked Wilkins to take Mr. Brown downtown so they would not be interviewing a potential witness in the middle of drug trafficking area. When he was interviewed at the police station, Mr. Brown told Detective Schultz, I got the drugs from Kizzee just now, immediately prior to my arrest. I have gotten drugs there before. There are additional drugs in the house. Two weeks before trial, the prosecutors interviewed Mr. Brown. At that point, Mr. Brown said, I will not tell you where I got the drugs. I do not remember where I got the drugs. And if called, I will testify that I did not get them from Mr. Kizzee. That's all in the suppression hearing at pages 643 to 652. I should caution you there's two copies of the trial testimony and the suppression testimony, so my record sites and Ms. Jones may not be the same. At that point, all of that is in the record. What is not in the record is the testimony of Mr. Kizzee. He went further and told one of the prosecutors, if called, I will invoke my right under the Fifth Amendment. Even without that statement, at that point in time, the United States could not call Mr. Kizzee for two valid reasons. First, the only reason to call him since he had now told us four versions of the events. You mean Mr. Brown, you said Kizzee. I'm sorry, I'm sorry, Mr. Brown, I apologize, my mistake. The United States could not call Mr. Brown. And that is the purpose of the story. I got the drugs from Kizzee. I don't know where I got them. I'm not going to tell you where I got them. I'm going to plead the Fifth. We could not call Mr. Brown as a witness simply to impeach him, and we could not call him if we had a good faith basis to believe that he was going to invoke his right under the Fifth Amendment. He was, however, under subpoena and at the conclusion of the suppression hearing, immediately prior to jury selection and trial, the prosecutors offered trial defense counsel to bring Mr. Brown to trial if they wanted to bring Mr. Brown as a witness. Agreed, they have absolutely no burden of proof in a criminal case. The lead trial defendant, the lead defense counsel, said, my main interest in Carl Brown was for the suppression hearing, not for the trial itself. Essentially, that ship has sailed. The offer was renewed. We have Carl Brown under subpoena. We can bring him to trial if you want. Defense counsel declined. Fast forward to trial. Detective Schultz is on the stand. He recants the events of the experience. It's a hand-to-hand drug deal. Brown is stopped moments later and just a few blocks away. He's found in possession of half a gram of crack cocaine. The logical conclusion is that it came from Kizzy. Lehman questions Brown at the police station and Brown confirms, I bought the drugs from Kizzy. Kizzy has more drugs in his house. I bought drugs from Kizzy before. At the pre-trial interview with the prosecutors, Brown said, I do not want to be known as a snitch in the Huntsville neighborhood and reminded the prosecutors that his stepdaughter had a child with Kizzy. So there was a personal relationship between Brown and Kizzy. That is the reason the prosecutor asked Detective Schultz five short leading questions which in no way, shape, or form contain either direct statements from Mr. Brown or violate the confrontation clause. But they did imply to the jury that Mr. Kizzy was selling drugs. They did imply to the jury that Mr. Kizzy was selling drugs. We stopped Brown. Brown had drugs moments after Brown had left Kizzy's house. Right, but that's different information from asking the hand-to-hand by that we're observing the house, that he went to the house and shortly thereafter he left, they found drugs. All that was showing that maybe there was some drugs dealing going on at the house. But the question that did you ask him if he bought drugs from Kizzy, mentioning the defendant by name, is different from the independent evidence that the police could observe and see that there was drug dealing going on. Yes, sir, your honor. Perhaps, admittedly, not one of our better selections, although I would hasten to add I'm in no way, shape, or form conceding that we did anything improper, nor do I wish to second-guess the trial prosecutors. The detective, precisely as Judge Jones said, they stopped Brown. Brown had drugs, we got a search warrant, which was executed the next day. During the execution of the warrant, the first car arrived and found Kizzy in front of the house. Kizzy saw a marked patrol unit with the lights on and immediately ran inside and slammed the door. Detective Schultz, who was well acquainted with Kizzy and Brown both, arrived second. As Detective Schultz arrived, Kizzy opened the door and stuck his head out of the door. He made eye contact with Schultz, slammed the door, and bolted the door. The police had to break down the front door, which took approximately 45 to 60 seconds. During that period of time, one of the officers at the rear of the structure, and I note in the brief that we both call it a house, it's apparently a dress shop owned by Mr. Kizzy's mother. The building is perhaps 600 to 700 square feet. It's not a traditional house. There was no kitchen, there was no bedrooms. One of the officers heard Mr. Kizzy running as soon as he got out of his car. It took 45 to 60 seconds to get the front door. When Schultz and an ATF agent got through the front door, Kizzy was in the bathroom pouring water from a five-gallon jug into the toilet because there was no water to the house. So what does this have to do with the questions that were asked at trial? I mean, are you arguing there's plenty of other evidence to convict him? So whether if this is admissible or not, there's independent evidence where a jury could have convicted him? Is that what you're arguing? I'm arguing that the question was proper and that it was admissible, but even if you assume that it was improper under the Johnston case, there was abundant other evidence of guilt. There were two fully functional rifles, one of which was loaded in the corner of the house within easy reach of both the front door and the bathroom, since the house is only 600 square feet. Kizzy had a selection of ammunition, including ammunition for the two semi-automatic .22 caliber rifles. A search of the bathroom yielded approximately .2 grams of cocaine in a plastic envelope in the overflow of the sink adjacent to the toilet that Kizzy was furiously pouring water into when the officers arrested him. And there were three cell phones, one of which had the text from the previous day warning him that the police had arrested Carl Brown. Even if the court were to conclude, and I respectfully submit that you should not, that under Johnston the questioning was improper, there is abundant evidence of Mr. Kizzy's guilt. As to the, well, the hearsay and the confrontation argument both, there simply was no hearsay, there is no out-of-court statement offered for its truth. It is inferrable from the questions, and granted, in hindsight, we could have truncated the questioning. Did you? In hindsight, my eye. I mean, this is, you know, I'm not going to tell you I'm an expert on evidence law, but you plan your, you being the government, plan your prosecutions well in advance, and you know you have a script of the questions you're going to ask, and it just didn't come up by accident that the guy keeps plowing after what Mr. Brown, you know, the interview with Mr. Brown. I understand the court's concern, Your Honor, and I respectfully submit, in hindsight, it might well have been better to truncate the questioning with, because Detective Lehman was there when Brown was arrested, so he saw the arrest, he saw the seizure of the five crack rocks, which Mr. Brown managed to crush during the arrest process. It might have been better simply to ask, precisely as you said earlier, you arrested Brown, Brown had drugs, what happened next? We got a warrant and searched Kissy's house and found firearms and cell phones and ammunition for the firearms and two-tenths of a gram of crack cocaine in the overflow to the sink. A reasonable jury could infer that there may well have been additional drugs that went down the his five gallons of water. Are there any additional questions? It has nothing to do with the merits of the case. How many Fifth Circuit arguments have you given now, Mr. Berry? Have you kept track? I know it's been a lot. Not a precise number, Your Honor. I'm just curious, doesn't matter. Forty to fifty. Okay. He's selling all his pens on eBay. Touche. Actually, I think I've given almost all of them away to friends and colleagues. They are quite the souvenir. Are there, is there, there's no further questions and I'll yield the rest of my time. Thank you, Your Honor. Thank you. Ms. Jarman. I have one correction that I want to make from the record. The government says that there is other testimony that Mr. Kissy was engaged in drug trafficking. In the record, page 559 through 562, this is taken from the suppression hearing. The evidence produced at the suppression hearing shows that Mr. Carl Brown informed the officers that they had made a mistake because he never implicated Kissy during their questioning. Brown also informed the officers that he would not testify the way they wanted him to. And then Officer Schultz threatened Brown saying, I'm going to make you my special project. So at the suppression hearing, there was some argument that Mr. Brown may have made himself unavailable to the government as a result of Mr. Schultz's statement that I'm going to make you my special project. Now also in the record, 1214 and page 1349, Detective Lance Schultz and Agent Lehman, those are the two officers that observed Brown go to this structure in the case. And they both testified that after a brief encounter with Kissy at the home, Brown left in a gold Nissan Pathfinder. There is no trial testimony from any officer that they observed a drug transaction take place. And the government says that that's the only logical conclusion that could be drawn here. There are other conclusions that could be drawn as well because in this circuit, we do not convict based upon inferences, impounding inference upon inference and innuendos. We don't know and there's no record evidence as to where Mr. Carl Brown was before he was observed arriving at Mr. Kissy's residence. We have evidence in the trial though that this was a suspected known place where drugs were sold. They had the house under observation. They saw Mr. Brown go there. Shortly thereafter, he left. They stopped them. They found drugs. When they ran the search warrant, there were guns, there were drugs, there was a lot of cash money that he had in his pocket. What do you say to the argument that there was, aside from this statement, whether it's incorrect or not, assuming it's improper, that there's enough independent evidence for a jury to find him guilty aside from the questions that were asked of the officer with regard to the interview with Mr. Brown? One of the things that the government speaks about is water and the rifle. I myself am from East Texas. When a home does not have water, my grandfathers didn't, water is oftentimes used to flush the toilet. There were no drugs found in the toilet. As a matter of fact, one agent even testified that the pipes were taken apart and no drugs were found in the toilet. In that area, Huntsville, I think it would be a logical conclusion that most homes would have a rifle in that part of East Texas. There was also testimony that Mr. Kizzy's fingerprints were not found on the rifle. As a matter of fact, the ammunition that was found at the location did not even fit the rifle. The officers testified that there was no evidence that would indicate that Mr. Kizzy destroyed drugs because they didn't find anything anywhere except for that small two-tenth in the sink. And Officer Schultz, the chief officer during the search warrant execution said that there was no evidence of someone using crack and there were no items found consistent with the use of crack cocaine. Said the bathroom shelves, microwave, Pyrex cups, anything in there that could have been used to facilitate drug trafficking, there was no drugs found there. And I would like this court, in reviewing this case, to bear in mind that the charge here is not possession. The charges here have to do with drug trafficking and there is no evidence of drug trafficking in this case. Thank you. Thank you, ma'am. You were court-appointed.